UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CLIFFORD LITTON,

    Plaintiff,

    v.        Case No. C-1-07-027

TALAWANDA SCHOOL DISTRICT,

    Defendant.

### ORDER

This matter is before the Court on defendant Talawanda School District's Motion for Judgment as a Matter of Law (doc. 74) and plaintiff's Memorandum Supporting Plaintiff's Proposed Judgment Entry (doc. 75).

### I. Background

Plaintiff Clifford Litton, an African-American male who was 58 years-old at the time he filed this lawsuit, brought this action against the Talawanda School District claiming race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000, et seq., and Ohio law; age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq.,

and Ohio law; and breach of Ohio public policy. The Court granted summary judgment as to plaintiff's claims for breach of Ohio public policy, any claim related to the loss of his head custodian position with defendant, and his age discrimination claims pertaining to his failure to be hired at the High School upon the retirement of another employee, Cecil Burnett. The Court denied summary judgment as to plaintiff's race discrimination claims brought under Title VII and Ohio law related to plaintiff's failure to be hired at the High School upon the retirement of Burnett, all claims related to his failure to be hired as groundskeeper, and his retaliation claims brought under Title VII and Ohio law.

The case proceeded to trial on these latter claims. At the conclusion of the trial, the Court granted judgment to defendant as a matter of law on plaintiff's retaliation claim and submitted the following Special Verdicts to the jury for its determination:

> 1. Did plaintiff, Clifford Litton, prove by a preponderance of the legal evidence that his age was a motivating factor in the defendant's decision to deny him the position of Groundskeeper/Maintenance?

**2. Did plaintiff, Clifford Litton, prove by a preponderance of the legal evidence that his race was a motivating factor in the defendant's decision to deny him the position of Groundskeeper/Maintenance?**

**3. Did plaintiff, Clifford Litton, prove by a preponderance of the legal evidence that
a) defendant's transfer of plaintiff to Talawanda Middle School constitutes a material adverse employment action?**

**b) defendant's failure to return him to his position at Talawanda High School constitutes a material adverse employment action?**

**4. Did plaintiff, Clifford Litton, prove by a preponderance of the legal evidence that his race was a motivating factor in defendant's decision to transfer plaintiff to Talawanda Middle School?**

**5. Did plaintiff, Clifford Litton, prove by a preponderance of the legal evidence that his race was a motivating factor in defendant's failure to return him to his position at Talawanda High School?**

**6. What amounts of damages, if any, did plaintiff, Clifford Litton, prove by a preponderance of the legal evidence were directly caused to him by the defendant's unlawful age discrimination, and/or race discrimination?**

**The jury answered "No" to the first three Special Verdicts and thus determined that (1) neither plaintiff's age nor race was a motivating factor in defendant's decision to deny him the position of Groundskeeper/Maintenance and (2) neither defendant's transfer of plaintiff to Talawanda Middle School nor defendant's failure to return him to his position at Talawanda High School constituted a materially adverse employment action. The jury answered "Yes", however, to Special Verdicts No. 4 and 5, finding that plaintiff's race was a motivating factor in both (1) defendant's decision to transfer him to Talawanda Middle School and (2) defendant's failure to return him to his position at the High School. The jury determined in Special Verdict No. 6 that plaintiff was not entitled to any back pay or front pay but that he was entitled to $50,000 in compensatory damages.**

**At the Post-Verdict Proceedings, defendant moved the Court to enter judgment in its favor on the ground that plaintiff's failure to prove a materially adverse employment action precluded judgment in his favor. Plaintiff moved the Court to enter judgment in his favor. The Court initially denied plaintiff's motion and stated that defendant's motion was**

granted and it would enter judgment for defendant. Post-Verdict Proceedings Tr., pp. 9-11. Plaintiff asked to be heard. The Court subsequently held a hearing, following which it granted plaintiff's request to defer entry of a judgment pending submission of briefs by the parties on the issue of whether they are entitled to judgment in their favor.

Defendant subsequently filed its Motion for Judgment as a Matter of Law and plaintiff submitted his Memorandum in Support of Proposed Judgment Entry.[1] Defendant asserts that prior to submitting the case to the jury, the Court did not determine that plaintiff had established a prima facie case of race discrimination and did not decide whether defendant's transfer of plaintiff to the Middle School and its failure to select plaintiff for an open position at the High School constituted materially adverse actions. See Jury Charge Conference Tr., p. 21. Defendant contends that instead the Court sent these issues to the jury for its determination.

---

[1]Although defendant's motion is captioned "Motion for Judgment as a Matter of Law," it does not appear that defendant is moving for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a)(1). In any event, judgment as a matter of law would not be appropriate as this is not a case where there was no genuine issue of material fact for the jury and where reasonable minds could come to but one conclusion in favor of defendant. See *Gray v. Toshiba Am. Consumer Prods., Inc.*, 263 F.3d 595, 598 (6th Cir. 2001).

**Defendant argues that plaintiff has not met his burden of establishing a claim of race discrimination because he failed to convince the jury that his transfer to the Middle School and defendant's failure to return him to the High School constituted materially adverse actions.**

**Defendant argues that cases cited by plaintiff in support of his position that he is entitled to judgment in his favor do not support the argument that a finding of racial motivation without a finding of an adverse employment action is sufficient to establish the elements of a race discrimination case. *See EEOC v. Avery Dennison Corp.*, 104 F.3d 858 (6th Cir. 1977); *Imwalle v. Reliance Med. Products*, 515 F.3d 531 (6th Cir. 2008); *see also Desert Palace, Inc. v. Costa*, 539 U.S. 90, 93 (2003). Defendant contends that in both *Avery Dennison* and *Imwalle*, there was no fact issue as to whether the plaintiff had been subjected to an adverse action, given that the plaintiff in *Avery Dennison* had been suspended while the plaintiff in *Imwalle* had been terminated. Defendant also argues that *Desert Palace* does not support plaintiff's position because the issue in that case was "whether a plaintiff must present direct evidence of discrimination in order to obtain a mixed-motive instruction under 42 U.S.C. § 2000e-2(m)," whereas that is not the issue in this case.**

Defendant further notes that the instruction at issue in *Desert Palace* stated that the plaintiff had the burden both of establishing that she had suffered adverse work conditions and that her sex was the motivating factor in defendant imposing such work conditions upon her. *Id*. at 96.

Finally, defendant argues that there are no grounds for the Court to grant a Rule 49 motion because the Court did not issue a General Verdict for the jury to answer, so that the Special Verdicts cannot be inconsistent with a General Verdict.

Plaintiff argues that because the jury concluded that defendant had treated him less favorably because of his race, the law prohibiting employment discrimination in any form requires the Court to enter judgment for him in the amount the jury awarded. Plaintiff contends that Sixth Circuit law holds that after a trial on the merits, a reviewing court must focus on the ultimate question of discrimination and cannot return to consideration of whether the plaintiff has proven a prima facie case, so that the jury's finding of discrimination should not be disturbed. *See Avery Dennison,* 104 F.3d at 861; *Kovacevich v. Kent State University*, 224 F.3d 806, 825 (6th Cir. 2000); *see also U.S. Postal Svc. Bd. of*

*Governors v. Aikens*, 460 U.S. 711, 714-15 (1983) (when a "defendant fails to persuade the district court to dismiss the action for lack of a *prima facie* case, and responds to the plaintiff's proof by offering evidence of the reason for the plaintiff's rejection, the factfinder must then decide whether the rejection was discriminatory within the meaning of Title VII.") Plaintiff also cites several cases for the proposition that the focus of a reviewing court, after trial on the merits, "is on the ultimate question of whether the defendant intentionally discriminated against plaintiff." *See, e.g., Barnes v. City of Cincinnati*, 401 F.3d 729, 736 (6th Cir. 2005); *Tisdale v. Fed'l Express Corp.*, 415 F.3d 516, 529 (6th Cir. 2005).

Plaintiff further argues that Special Verdict No. 3 is irrelevant to the Court's Judgment Entry because the jury found for him on the ultimate issue of race discrimination by deciding that his race was a motivating factor in defendant's decision to transfer him to the Middle School and in defendant's failure to return him to the High School.

In addition, plaintiff contends that there is a view of the case that makes the answers consistent, so the Court must therefore harmonize any alleged inconsistencies. *See Gallick v. Baltimore & Ohio Railroad Co.*, 372 U.S. 108, 119 (1963). Plaintiff argues that the jury could have

8

found defendant's involuntary transfer of him to the Middle School and defendant's failure to return him to the High School to be materially adverse if the jury had been permitted to consider these incidents together instead of being asked to look at each incident separately.

Finally, plaintiff argues that defendant waived its objection to any perceived inconsistency by failing to object before the jury was discharged. *See Central On Line Data Systems, Inc. v. Filenet Corp.*, 1996 WL 483031 (6th Cir. Aug. 23, 1996) (unpublished decision). Plaintiff maintains that if the Court finds the jury's answers are inconsistent and are not waived, then the Court must call the jury back to reconsider and resolve the alleged discrepancies.

## II. Applicable Law

Title 42 U.S.C. § 2000e-2 provides that it shall be an unlawful employment practice for an employer:

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . .

In the absence of direct evidence of racial discrimination, the

plaintiff may establish a prima facie case of discrimination through circumstantial evidence by showing that: 1) he is a member of a protected class; 2) he suffered an adverse employment action; 3) he was qualified for the position lost or not gained; and 4) the position was awarded to an individual outside the protected class, or the plaintiff was treated less favorably than a similarly-situated employee outside of his protected class. *Mitchell v. Toledo Hospital,* 964 F.2d 577, 582 (6th Cir. 1992); *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002). The United States Supreme Court has determined that it is inappropriate for a court to resolve a discrimination case on the grounds that the plaintiff has not made a prima facie case after the case has been fully tried on the merits. *See Aikens*, 460 U.S. 711. The Sixth Circuit in *Avery Dennison*, 104 F.3d at 863, explained that when the district court allows the case to proceed to a trial on the merits, the court implicitly acknowledges the existence of the plaintiff's prima facie case, in which case the defendant is entitled to judgment only if the plaintiff fails to prove the ultimate issue of discrimination. The Sixth Circuit has made clear that *Avery Dennison*

> stands for the simple proposition that in reviewing the facts of a discrimination claim after there has been a full trial on the merits, a district court or an appellate court must focus on the ultimate question of discrimination rather than on whether a plaintiff made out her prima facie case. Of course, there is nothing to prevent the court from considering evidence that also bears on that prima facie case as long as it does so in order to address the ultimate question of discrimination.

*Kovacevich*, 224 F.3d at 825.

### III. Resolution

Plaintiff is entitled to judgment in his favor based on the Special Verdicts returned by the jury. Neither Supreme Court nor Sixth Circuit law preclude the Court from relying on the jury's Special Verdicts based on the totality of the evidence presented at the trial. Trial judges are commanded to reconcile the jury's findings if possible. In this case, it is possible to reconcile the Special Verdicts because the plaintiff presented sufficient evidence of racial discrimination at trial for the jury to find for him on the ultimate issue of discrimination, even though the jury found in Special Verdicts No. 3 and 6 that he did not suffer a materially adverse employment action in the form of lost front pay or back pay.

In accordance with Supreme Court and Sixth Circuit law, once this case proceeded past the summary judgment stage and to trial, the focus

was on the ultimate issue of whether defendant discriminated against plaintiff because of his race. Plaintiff presented ample evidence at trial to both (1) support the jury's conclusion that his race was a motivating factor in defendant's decision to permanently remove him from the High School after 16 years of successful service as head custodian and day custodian at that location, and (2) support the jury's damages award. Mr. Gabbard and Mr. Rowan were the individuals who decided to transfer plaintiff from the High School and to keep him from returning to his position there. The High School was considered the centerpiece of the district. Mr. Gabbard described "centerpiece" to mean

> that the majority of the parents and citizens of the community that come into the building, they tend to come through the high school, for one, because that's where most of the events are. That's where, of course, the varsity games, those types of things, the drama clubs, just events like that that kids get involved in, most of the time it's focused more so there.

(doc. 57, page 10, lines 9-15). Mr. Gabbard further explained:

> Q. It's almost a 24-hour operation at the high school; right?
>
> A. Yes.
>
> Q. And people like to work there because of the visibility of the high school?

**A. Some people, yes.**

*(Id.,* lines 16-20). Plaintiff testified that when he asked Mr. Gabbard what was the reason for his transfer from the High School to the Middle School, "Mr. Gabbard told me that I didn't fit in." (doc. no. 58, page 27, lines 3-5). Based on this testimony and the other evidence of record, the jury was justified in concluding that Mr. Gabbard's decision to transfer plaintiff from the High School and not allow him to return was motivated by his belief that plaintiff did not fit into the elite atmosphere of the High School because of his race.

The jury's determination that plaintiff did not suffer a materially adverse employment action in the form of lost front pay or back pay is not inconsistent with its determination that defendant's decisions to transfer plaintiff from the High School and to refuse to allow him to return to a position there were motivated by his race. Just as requiring a human being to sit in the back of the bus because of her race is unlawful racial discrimination even though it does not cause an economic loss such as lost back pay or front pay, so is the decision to remove plaintiff from the High School because of his race unlawful discrimination as this jury rightfully found. It was the province of the jury to weigh the

**credibility of plaintiff and the witnesses, resolve the factual issues, and decide based on its credibility determinations and factual findings whether the transfer of plaintiff to the Middle School and/or defendant's failure to return plaintiff to the High School were motivated by the plaintiff's race. The jury resolved the factual issues in plaintiff's favor and found for him on the ultimate issue of race discrimination. When a discrimination case proceeds past summary judgment to a full trial on the merits, and when by its verdict the jury finds from the totality of the evidence that the defendant intentionally discriminated against the plaintiff because of his race, the jury's verdict is the law of the case and must be upheld.**

**The defendant's Motion for Judgment (doc. 74) is DENIED. The Court finds the jury's decision just and lawful and enters judgment based on the jury's verdict in favor of the plaintiff and against the defendant in the amount of $50,000, plus interest at the federal rate from November 18, 2008 and costs.**

**IT IS SO ORDERED.**

**<u>S/ Herman J. Weber</u>**
**Herman J. Weber, Senior Judge**
**United States District Court**
